Case number 23-1931, United States of America v. Michigan. Oral argument is not to exceed 15 minutes for the appellant, 15 minutes to be shared by the appellees. Mr. Mills, you may proceed for the appellant. Good afternoon, your honors. Ryan Mills representing the appellant, the Sioux St. Marie tribe of Chippewa Indians. I reserve three minutes for rebuttal. This case was filed over 40 years ago by the United States to protect the tribe's fundamental treaty rights against the state of Michigan unlawfully infringing on those rights. Today, that case has been flipped on its head and that fundamental purpose has been lost. Dishonor Court has now granted injunctive relief that severely impairs the tribe's treaty fishing rights and advances the state's interests. It did so without trial, over the Sioux tribe's objections, and it applied the wrong legal standard. You know, in reading this record, which is interesting because it goes back so long and there's so much in it, it does seem, at least superficially, that it's the Sioux tribe that's flipped its position. You argued that a decree could be imposed when there was another tribe that was opposing. You argued in favor of zonal allocations. And now, all of a sudden, the tribe, correctly or incorrectly, has decided, well, I don't like that system anymore. And you fault the district court for essentially just moving this case forward based on the same principles that were established in 1985. So I know that's sort of a long, involved statement rather than a question, but if you put a question mark on the end, how would you respond to that? Yeah. So, Your Honor, in 1985, there is a very distinct difference that this court needs to be aware of. And in those hearings in 1985, entering that decree, there were two competing decrees and all parties agreed the court could choose one of those two competing They would be bound to one of those two decrees. That's not the case here. We don't have competing decrees. We have one decree that was entered above the Sioux tribe objections and without But is the two optional things to choose from, is that not the facts of the earlier case as opposed to the standard that arises from the earlier case? You don't have to have the same facts here, do you? It wasn't what the court relied on. It's equitable capacity and the law of the case, right? So tell me why the argument is that you're bound by the facts under which the other case was decided as opposed to what the court claims is its prerogative to do. So, yeah, the Sioux tribe is not, we don't contend that the district court did not have equitable authority to enter a decree. However, when looking at how this decree was entered and the injunctive nature of it, there should be a higher standard that the stipulating parties have to get to. These 15 factors that were used in 1985 and then used again here in 2023 go much more towards reasonableness and equity of a consent decree. Understanding in 1985, there was not full consent of all the parties, but all parties did consent to being bound to one of those decrees. And in 2000, of course, it was entered by stipulation of the parties. So these 15 factors that Judge Enslin used in 1985 and that this district court in 2023 also used to help analyze its entry of the 2023 fishing decree go more towards a consent decree, even though the court didn't fashion it as such. I understand the analogy, but what is it that you would point to to say that the way this court decided in this situation was proscribed? I know it partakes of a consent decree, like any law, but some of the consent decree issues do address the entirety of the regulation and the use of this water and the fisheries, right? I'm struggling with the standard you want to impose in light of what this court, apparently based on previous rules also, employed as the way to govern this. In using equitable principles, cautioned by the law of the case across the many years that this has gone on, what is your best precedent for saying that's just wrong? The procedural history of this case, both in 1985 and in 1999, when there was a dispute to entry of decree and the court set the matter preliminary for trial, then held a hearing, a reasonableness hearing, entered one of the two decrees. Then again in 1999, the district court did set a trial in the event the parties could not come to an agreement on a decree. They did in 2000 and entered by stipulation the 2000 consent decree. The procedural history of this case has been to schedule that trial and be prepared to adjudicate on the merits when there's a dispute of a decree. Here there is a dispute on the entry of this. Was there a motion to hold that trial? We did. After the court said what it was going to do? The Sioux Tribe had a pending request for a trial. It's in the record at 2078. It was entered in February of 2022, asking for that trial. It didn't materialize and it was pending until... But what the court was speaking to was after that time, wasn't it? And extended the opportunity for someone to come forward and request further evidentiary work or further litigation. But the record does not show that there was a motion, does it? There was no motion after the objection hearing. There was the pending motion that Sioux Tribe had filed requesting status conference and scheduling for trial. The district court, and it's in the transcript, you'll see the district court did state that it was considering open the record for evidentiary hearings. It didn't explicitly state that the parties had to make another motion. The Sioux Tribe had a pending motion, which should have been sufficient to notice the court that it wanted an evidentiary hearing on these matters without having to make another motion. Their motion was already pending. On the 137 objections, was there anything in the record that constituted affidavits or expert testimony or a motion to consider an expert? There were affidavits filed previously in this very long record, as your honors know. For that specific hearing, no, the Sioux Tribe did not have any other evidence filed. For the 137 objections, right? Because it had the pending motion for trial. It expected an evidentiary hearing based on the previous posture that the district court had taken in 85 and in 99. It did not make another motion. It expected that trial, your honors. Did you ever go back and say, hey, judge, we've got this pending. We don't have to do on this? Both during the objection hearing, as noted in the transcript, it was brought up. It was again reiterated when the Sioux Tribe filed its proposed finding of facts pursuant to the district court's request that it objected to this process. It was going to follow it, but it did object to it. It reminded the court that a trial needed to be set. It had also the pending motion, which we already discussed. I want to go back just a second to the injunctive factors that you've mentioned several times. You didn't assert this objection at the time of the 2023 decree, right? You didn't style it as it being injunctive relief. You didn't cite the factors. You didn't ask the judge to consider the factors at all, right? Sioux Tribe would not style it exactly as injunctive relief, no, your honor, but they did have... Did you cite the rule for injunctive relief? They cited this court's rule for when the state can unilaterally impose regulations, which is a similar standard to the injunctive relief, and they had their pending... They objected to the process overall. They objected to the irreparable harm. Did you cite the rule for injunctive relief? No. Did you cite the fact... Did you discuss the factor, the four factors? I did not... The Sioux Tribe did not cite the four factors, but regardless, this court does have the discretion to remain... That would be consistent with 1985, would it not? We look back at 1985. The fact of, in your view, a consent decree being the equivalent of injunctive relief was not discussed in 1985 either, was it? Not in 1985, but... What it looks like is that you don't like the way this is going. I get that. You think the Sioux Tribe's fishing rights are not being adequately protected under the 1836 treaty. I get that. I'm not questioning any of that, but it just looks like you're dreaming up new things after the fact to complain about the 2023 decree. You don't put in any evidence that supports any of it. There's just a whole lot of things that you don't like. I'm trying to figure out what we do with that. Respectfully, Your Honors, the Sioux Tribe did request that trial. Presumably at a trial we would have the opportunity to create the evidentiary record that wasn't able to be created at the objections hearing. This court has discretion to remand even if this court finds that we didn't, as best as we could, preserve the argument for injunctive relief. This court has a discretion under the Johnson case to remand down. This is treaty rights we're talking about. These are the highest law of the land. The fact that they're being abrogated without a trial, frankly, the Sioux Tribe was kicked out of negotiations in August of 2022, continually objected, and then was a decree forced upon it without the stipulating parties being able to show that the injunctive relief was necessary and that that standard was met. Isn't this much like the United States versus the State of Oregon case from 1990, where the court did effectively the same sort of procedure, approved a plan allocating salmon harvest and steelhead over the objections of Idaho and the Shoshone Tribe, both of whom had participated in the negotiations, and then went on to discuss treaty rights and to conserve the resource, and ended up treating this the same way as this judge did, even though it was not technically a consent decree? Is that not another circuit showing the same sort of procedural and standard of review methodology that the district court used? It is very similar. There are distinctions between that case and our case here, one of which is the State of Idaho was arguing kind of hypothetically what damages may come to it, sort of specific damages like abrogation of a treaty right. The Shoshone Tribe did not have fully recognized federal treaty rights. And in footnote four of that case, the court in the Ninth Circuit did recognize that, though it was like a consent decree, if it's being imposed on a party that has substantial affirmative rights, like the Sioux Tribe does in this case, its treaty rights, that a trial on the merits was what should have happened. The Shoshone Tribe didn't have the treaty rights that the Sioux Tribe is under its 1836 treaty, asking this court to respect. And also the State of Idaho didn't cite any specific likelihood of harm. It was more hypothetical. I want to ask the same question, but in a slightly different way. First of all, we haven't been using the word consent decree. You have. And you've conceded in the pleadings that this is not a consent decree. Everyone agrees, Your Honor. Everybody agrees with that. So we'll just say decree. I can't find any cases that, in our circuit at least, in dealing with the process of getting to the entry of a decree that requires a trial. Matter of fact, it seems to me we've said that you're not even entitled to a quasi-trial. You're just entitled to a process, including the opportunity to object and have a hearing on your objections to determine whether the decree is reasonable. So am I missing something? Is there a case that you're relying upon when you say with such conviction that there had to have been a trial? Well the U.S. v. Michigan, the prior procedure contemplated that very scenario. We had two decrees previously, right? One was stipulated, but a trial was set for if we didn't come to a stipulation. And in 1985, also a trial was set. But procedurally, all the parties agreed. Setting a trial is the easiest trick in the book for a district judge, to get the parties to come to agreement. And that's happened several times during the same process. But I can't find a case that says in entering a decree exercising the court's equitable jurisdiction, there has to be a trial. And in fact, the cases seem to say there doesn't have to be a trial. So I just want to know if I'm missing something here. No, Your Honor. I don't think you're missing anything. But a lot of those cases, I know we're not in a consent decree, but they do talk about the consent decree. And a lot of those distinguishing factors, like the Oregon case, come down to how those parties who are objecting, what rights are affected. And if they have rights affected, or if it's a nebulous, maybe a hypothetical that found the line, something might be affected. But here, we have treaty rights that are clearly affected. This is a far cry from 1979, when we first affirmed the Sioux Tribe and other tribes' treaty rights, that they could fish anywhere in the ceded waters. This is highly restrictive, and it's improper and unequitable to force it on a tribe without proper adjudication, without finding those injunctive standards. All right. Thank you. Would you pronounce the name of your tribe for me, please? Sioux St. Marie Tribe of Chippewa Indians. Yeah, it's a weird French spelling, right? Yes, and I don't want to be insensitive and incorrectly pronounce it. It is Sioux. Sioux, thank you. S-O-O, you can think of it that way. Sioux. That works for me. We appreciate it. Thank you. Good morning, Your Honors. May it please the Court, Ben Richmond for the United States. I just want to start by clarifying, Your Honors, what issues are in and what issues are out in the case. Sioux Tribe abandoned its challenge to the 2023 decree as a consent decree. It abandoned its challenge to the extension of the 2000 decree. So I'll focus here on how the Court appropriately entered the 2023 decree as a judicial decree, based on its equity and continuing jurisdiction. Sioux Tribe is arguing that the 2023 decree should have been entered as an injunction. The Tribe forfeited that argument because it failed to make that argument below. The Court can also stop Sioux Tribe from making that injunction argument because it's inconsistent with the Tribe's prior litigating position. But it said it would not do so. Excuse me? It said it would not call judicial estoppel, correct? Correct. You know, just so we don't miss this, it seems to me in reading all of this material that occasionally courts do use the word injunction when they're addressing something involving a decree. But the injunction concept is how you enforce a decree, not how you enter a decree, at least as I read the cases. So am I off track there? I think that's correct, that courts enter injunctions to prevent a party, for example, a state, from infringing on a tribe's treaty rights. Here, you know, what we have is, you know, I don't think the district court was required to rely on the injunctive standard. You know, the injunctive standard existing, it doesn't strip the court of its equitable authority to enter this decree here. But if somebody comes back to Maloney and says that one party or the other is violating the decree, the remedy that you would seek would be injunctive relief to require you to comply with the decree, would it not? I think that's correct, Your Honor. All right, that's all I wanted to know. Yes. So help us formulate what the standard of review is here. You know, I'm looking at the 1985 decision. The court noted that the burden is on the stipulating parties. But in a footnote, it said the sue does not meet its burden in showing that the proposed decree is unreasonable merely by raising conclusory, unsupported objections. So whose burden is this? And how do you state what the standard of review is? The burden is on the stipulating parties. I think the district court was clear that in reviewing all of the different evidence and all of the objections, the burden ultimately lay with the stipulating parties. And that equitable determination of all the different facts and evidence before the court is reviewed for abuse of discretion. I think the court's equitable authorities here come down to three different primary sources of authority. The first would be following the law of the case, how the decree was entered in 1985. The second source of authority would be equitable authority consistent with fishing vessel, U.S. v. Washington, U.S. v. Oregon, and other equitable allocation cases. And the third source of authority would be continuing jurisdiction. So just starting with the 1985 decree, the entry of the 1985 decree, the court in 1985, it made a decision based on its continuing jurisdictions, its power as a court of equity to protect the treaty right and protect the resource. So that was considered 15 different factors, but what it came down to was equitable determinations, balancing the treaty right with the health of the resource. And the district court... That was also the standard in 1979 when the district court entered a declaratory judgment and that decree engaged with the same process. Is that right? No, I think this process is specific to allocation of the resource and equitable determination. Following the zonal decisions? So we see allocation as incorporating zonal plans. And what the district court did here was consistent with the 1985 process. Sioux Tribe filed objections and the court adjudicated those objections and it made findings here that the decree would protect the resource and protect the treaty right. I think Sioux Tribe is focusing on dicta in the 1985 opinion in an attempt to try to distinguish it, but that one sentence of dicta was merely the parties acknowledging that there were different options before the court. It could choose one of the two plans or neither. But I think the record is clear that the 1985 decree was entered over the objections of Bay Mills. The Bay Mills Tribal Council voted down the decree. The Bay Mills Indian community filed objections on the record. The court recognized those objections, adjudicated them, and entered the 1985 decree over Bay Mills' objections. And Bay Mills ultimately did not sign the final decree that was entered by the court. Sioux Tribe is also making some points about the trial being set in 1985, but ultimately a trial was continued. So we don't see the proceedings in 1985 as encompassing a trial because a full trial was continued. The second source of authority which this exercise of equitable jurisdiction is consistent with is fishing vessel and its progeny. So in fishing vessel, the Supreme Court affirmed a district court's power to apportion a fishery resource between users based on an equitable determination, again, balancing the treaty right with the resource. And courts have relied on fishing vessel in standard... Excuse me, they've relied on fishing vessel in similar cases like U.S. v. Washington, U.S. v. Oregon, and also cases like the Milag Span v. Minnesota and LCO v. Wisconsin. In all of these cases where there is a treaty right... Excuse me, where there is a natural resource subject to a treaty right, and courts are tasked with apportioning that resource between treaty and non-treaty users, that determination ultimately comes down to an equitable determination. Can I interrupt you for just a second? Yes, Your Honor. Just to tell you something that I'm curious about. Neither of you have really developed this, but we can't lose sight of the fact that you, meaning the federal government, started all this. You're the one that sued to try to protect the Indian tribes from regulation by the state of Michigan. So you kicked all of this off. And then since then, however many years that is, this has been a never-ending consent decree, which is sort of odd in our world that something never ends. I'm surprised that your friend on the other side didn't argue about this. But are you at all concerned about this just continues on forever? Well, I think theoretically the case could end if there was a final determination of allocation. But because the resource is dynamic, because it's subject to change based on climatic changes, and invasive species, I don't think allocation can here be set for all time. Because of the specific nature of the resource? Yes, and I think not just the resource, but also the nature of this unique Indian treaty law. This is how, in these types of cases, courts have allocated resources. And essentially the decree will go... Well, excuse me, the district courts involved in the case goes dormant for about 20 years at a time, unless there's a need for parties to go to the court to seek relief. And then because the resource changes over time, we'll try to negotiate and enter a new... So if it involves Indian tribes and it involves fish, it never ends. That's basically what you're saying. I don't think it never ends. You know, allocation could theoretically be determined at some time. But I think here the factual findings and the records support this case and the decree being entered in this stage of the proceedings. I mean, the district court didn't mince words when it talked about harm to the fishery. It said without a decree, there would be a free-for-all. It would lead to the demise of the fishery in its entirety. That's at page ID 15160-61. It called efforts to fish unconstrained from the decree self-destructive. That's at 15163. And it would also point the court to, for example, Grand Traverse Bands' affidavits here in this case, talking about how one party fishing unconstrained from the management framework would irreparably harm Grand Traverse Bands' interests. So the other consistent but moving issue is that it is a communal resource. Exactly, Your Honor. And here, Sioux Tribe, since 2010, has been fishing two-thirds of the tribal treaty allocation. But they share the resource in common with four other tribes. So it's particularly important to keep the decree in place here in order to have an equitable allocation where we have a scarce resource that's shared between seven sovereign parties and that the treaty right is shared between five tribes. So, just to hit a few more points, Your Honors. Sioux Tribe, they're talking a little bit about allocation law and legal standards. And I think a lot of their discussion of the allocation standards, they rely on cases that are interstate water adjudications between states adjudicated under the Supreme Court's original jurisdiction. I just want to be clear that those water adjudications between states don't apply to tribes. And I think when Sioux Tribe cites a legal standard for an allocation, they're pointing to cases like MILAX ban and the LCO litigation. And in those cases, they rely on fishing vessel. So I think fishing vessel and the equitable standard there is the appropriate standard for the Court to follow. One last point I want to make is that even if the Court found that the injunctive standard were, for some reason, required here, we don't think that's necessary because of the law of the case and the equitable cases under fishing vessel and continuing jurisdiction. But even if we got to that point, the District Court's 139-page opinion is comprehensive. It made clear findings about irreparable harm to the fishery in the absence of a management framework. That type of harm to the natural resources can't be remedied at law. I think the public interest and the balance of the harms would all weigh in favor of keeping this decree in place, continuing this management framework, which has been largely successful since 1985. So unless the... Why were the Sioux excluded from negotiations at the end? Your Honor, we negotiated with Sioux for three years, since 2019. And at the very end of the negotiations, it became clear that we wouldn't be able to reach an agreement with the Sioux Tribe. And only at that time did the stipulating parties just work together to finalize the decree. So we spent three years attempting to negotiate with Sioux, and I wish we could have reached an agreement in this case. Unfortunately, it wasn't possible, and that's why we're before the Court. Was that about the same time that the parties stopped talking to the Coalition of Fishermen, too? Yes, I think it's about the same time. It was just at the 11th hour. We did everything we could to bring this to a conclusion, and it wasn't possible after three years. So unless there are any further questions, the judgment below should be affirmed, and I'll let the State continue argument. Good afternoon, Your Honors. Kelly Drake for the State of Michigan. At the risk of repeating my fellow counsel for the United States, this Court should affirm for three reasons. The first is that the Supreme Court has no authority to enter judicial decrees governing a scarce treaty resource pursuant to the Supreme Court's decision in Fishing Vessel and the law of this case. The second, and this goes to Judge McKee's comments earlier, this type of order is necessary here because the tribes have a perpetual treaty right that depends on a scarce and finite resource that is shared by multiple sovereigns. Simply put, there are not enough fish to go around. And third, the District Court appropriately included Sioux Tribe in the 2023 decree because a resource this complex requires joint management by all parties. Allowing the Sioux Tribe, or really any of the parties, to manage its fishery independently of the other parties would lead to a racehorse fishery, which would put the resource and the treaty right at risk. I don't know if the panel has any questions. I don't want to be repetitive of what has already been said by Mr. Richmond. What role is Michigan's regulatory activity taking now under this agreement? Sure, so it's similar to what we had under the 2000 decree where state recreational fishing is regulated by the state. Commercial fishing is regulated by the state. State commercial fishing is regulated by the state. Tribal commercial fishing is regulated by the tribes through their joint inter-tribal management authority. So two separate regulatory arms there to resolve the problem that started this whole thing. Exactly. The state does not directly regulate the tribal treaty fishery. It regulates its own fishery and the tribes regulate their own fishery. But we do it under the framework of the 2023 decree which provides example for information sharing so that the parties have a complete picture of the resource. They work cooperatively through the technical fisheries committee. The biologists for all of the tribes come together to, for example, set harvest limits after determining how much of... But everyone is subject to the electronic data provision. That is correct, Your Honor. Questions? Thank you. Thank you. Rebecca? Thank you, Your Honor. Just a few points. There was discussion about whether this was a never-ending consent decree or if this case might go on in perpetuity. Certainly the prior consent decrees and in this fishing decree, they have dates at certain times where they end. The first one was 15 years. The next one was 20 years. This one is now set for 24 years. In a way, part of this can't end. When the consent decrees or the fishing decrees, as this one is fashioned, hit that date of expiration, they're not meant to create precedence. They're not meant to bind the tribes or the state or the feds in this type of management framework. They are by agreement, most of the time, not in this case, they are set to end though and not to necessarily carry on. There are other ways that the parties can fashion management procedures. It doesn't have to be a decree. It just happens that we've had decrees. But presumably whoever wants it to stop and in your case, let the tribes regulate fishing themselves, which is really what you want, you'd have to establish to whatever judge was monitoring this at the time, that that was the best approach to protect the tribes' rights under the treaty and the fishery. Would that be right? You didn't take the position that it should have ended. You just took the position that it should look different. Sioux Tribes of the position that this decree should look different or at the very least should be held to the standard of injunctive relief before it was entered. This could be the best decree. Sioux Tribe doesn't think it is. It is very comprehensive in its opinion but that doesn't negate that the district court used the wrong legal standard, which is an abusive discretion. The legal standard here is injunctive relief. Should have been injunctive relief. Not some kind of 15 factor reasonable, equitable standard. It should be injunctive standard. This court has the discretion to remand down under that standard. In a nutshell, to give you the last shot at this, why should we exercise our discretion in that way after all the time and effort that was put in by District Judge Maloney and all of the parties including the Sioux Tribe up until the end? We've got this 139 page very comprehensive agreement. Other than process complaints, you really haven't told us what's wrong with the end product. You just don't like how it got to it. Sioux Tribe is not here to argue the merits. They're here to argue the fact that this was improperly and unlawfully entered. That is correct, Your Honor. We're not here arguing the merits of any specific provision. We're here arguing that the wrong legal standard was used. Tree rights are the supreme law of the land. They are paramount to the tribes. Tribes fought hard to have those rights. To not have an adjudication on the merits and to not hold the stipulated parties to that injunctive standard would be a disservice to the Sioux Tribe to their treaty rights. The fact that the federal government agreed to this flies in the face of their responsibility to Sioux Tribe. Sioux Tribe deserves its chance to open the record, remand this case down for injunctive release standard and for all parties to put forth evidence to that standard. So your bingo is really to disrupt this carefully worked out process at least in this particular instance, right? Certainly not necessarily to disrupt anything but to make sure the stipulated parties are held to the correct legal standard and hopefully if this court does agree and remand this case down, Sioux Tribe will be back at the table instead of excluded from the process, excluded from the negotiations in the future. Has Sioux Tribe ever asked to be admitted because it was willing to alter the position on the merits position it had taken? You're not going to find it in the record, Your Honor, because it was part of the negotiations. But yes, Sioux Tribe, in our briefing we do allude to this. We multiple times asked to be back in to those negotiations. We weren't allowed back in for whatever reason the stipulated parties had. It's been talked about today that we were maybe we couldn't come to an agreement. I don't know if that's true. I think that there could have been an agreement. We don't know because Sioux Tribe was locked out of the negotiations at the end. They weren't given a copy in advance of the decree. It was filed by the stipulated parties without any notice to Sioux Tribe. So it's very speculative, Your Honor. One of the problems in you answering that question is all of you signed a confidentiality agreement, correct? So that you wouldn't reveal what happened during the negotiations. But the fact that Sioux Tribe was locked out of negotiations is in the record. We've put that on the record. It's hard for you to answer the question of exactly why or when the negotiations broke. I don't think you were asking that. I'm not intending to ask what the content of the disagreement was. No, understood, Your Honors. Can I ask you one more follow-up? I understand you're not here arguing the merits. I get that. You're making a process argument. But oftentimes when parties come before us and ask us to exercise our discretion or whatever it is and say that the process was wrong, the process wasn't properly followed, they justify that request by saying, and this is what happened when it went wrong. Now that gets over into the merits. I understand you're not making a merits argument, but it's hard to get a sense in reading all of this why it would have turned out differently had the court applied the injunctive factors and held a trial. I don't find anything in the record that suggests why it would have come out any different. It's precisely why Sutri was asking for that trial to put forth evidence to maybe see how it could have fashioned a different... It was its only recourse. It wasn't allowed to negotiate at the end. It needed that trial because... But I'm assuming, excuse me for interrupting you, if you had that evidence, I bet you would have been presenting that to us to say, look, this is what we would have presented had we gotten the evidentiary hearing that we say we're entitled to have gotten. And you can see when you read that that it would have come out differently. But we don't see any of that. All we see is that you don't like it. I'm going to have to point the court back to that pending request for trial and even accepting all the facts and what was presented at the objection hearing as true doesn't negate the fact that the wrong legal standard was used. It wasn't analyzed under the correct standard. We thank you for your arguments. This is an incredibly complex case and an important case over time for all of those sovereigns and we understand the difficulty of getting it done.